IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DONALD OSORIO, :
        Plaintiff, :
        v. : Case No. 3:04-cv-259-KRG-KAP
UNITED STATES OF AMERICA, :
        Defendant :

## Report and Recommendation

### Recommendation

The defendant's motion for summary judgment, docket no. 20, should be granted, and plaintiff's FTCA claim dismissed.

### Report

Plaintiff, while incarcerated at F.C.I. Loretto, filed a complaint which alleged a violation of the Federal Tort Claims Act, 28 U.S.C.§§ 1346, 2671-80, based on what he alleges to be negligence in providing him medical care. In brief, plaintiff's evidence would be that on November 14, 2001, he slipped and fell on a flight of stairs at the prison. Plaintiff apparently caught his right hand on a handrail while falling, and fractured a bone in the ring finger of his right hand. Plaintiff does not deny that he was given immediate treatment (his fracture was x-rayed and his hand was casted, apparently by the physician assistant at the prison), but he alleges that he was not seen by an orthopedic doctor until January 25, 2002, approximately seventy days later. The outside specialist, David M. Welker, M.D., recommended either a bone graft or a bone stimulator as follow up treatment because plaintiff's fracture was not healing as quickly as expected. According to plaintiff, the physician assistant and medical

hierarchy at the prison rejected the bone graft option; apparently the use of a bone stimulator was approved. Defendant's expert avers that as of 2006, x-rays of plaintiff's hand showed union of the fracture with no bony abnormalities, but plaintiff complains that he still suffers from pain in his right hand as a result of the treatment option chosen by the prison.

Prison inmates have a constitutional right that prison officials not be deliberately indifferent to providing care for their serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976). There is no colorable claim of deliberate indifference. The FTCA, by contrast, makes the United States liable for the torts of negligence or medical malpractice under circumstances where Pennsylvania law would impose liability for those torts on a private party. 28 U.S.C.§ 1346(b); see Gould Electronics v. United States, 220 F.3d 169, 179 (3d Cir.2000). Federal Rule of Civil Procedure 56(c) requires the entry of summary judgment ". . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "[T]he requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original). An issue of fact is genuinely disputed if the record contains sufficient evidence, see Rule 56(e), that under the

applicable substantive law a reasonable jury might return a verdict for the non-moving party. <u>Anderson</u>, 477 U.S. at 257. The question placed at issue by defendant's motion for summary judgment is whether a jury, examining the record in the light most favorable to plaintiff, and properly instructed as to Pennsylvania medical negligence law, could return a verdict for plaintiff.

To maintain a claim of medical malpractice under Pennsylvania law, a plaintiff must ordinarily provide an affidavit from an appropriate medical professional stating that the defendant medical care provider deviated from an acceptable standard of care. <u>See</u> <u>Velazquez v. UPMC Bedford Memorial Hospital</u>, 328 F.Supp.2d 549 (W.D.Pa.2004), <u>analyzing</u> Pa.R.Civ.P. 1042.3 in light of <u>Chamberlain v. Giampapa</u>, 210 F.3d 154 (3d Cir.2000). Even before Pennsylvania's affidavit requirement applied, case law provided that when a medical matter is at issue, unless the medical "matter ... is so simple, and the lack of skill or want of care so obvious as to be within the range of ordinary experience and comprehension of even nonprofessional persons," expert testimony is necessary to establish both the standard of care and the causation of injury. <u>Brannan v. Lankenau Hospital</u>, 490 Pa. 588, 417 A. 2d 196, 201 (1980), <u>quoting</u> <u>Chandler v. Cook</u>, 438 Pa. 447, 451, 265 A.2d 794 (1970); <u>Geibel v. United States</u>, 667 F. Supp. 215, 219 (W.D.Pa.1987), <u>aff'd</u>, 845 F.2d 1011 (3d Cir.1988). <u>See also</u> <u>Festa v. Greenberg</u>, 511 A.2d 1371 (Pa.Super. 1986)(expert testimony

3

necessary in informed consent case to prove existence of risks in proposed and alternative course of treatment), alloc. denied, 527 A.2d 541 (1987).

Plaintiff has no expert witness, and argues that none is needed, because there is "nothing complex in [a delay of seventy days before seeing a specialist]." docket no. 24. The decision in Bushman v. Halm, 798 F.2d 651, 658-59 (3d Cir.1986) is instructive on the point. The Court of Appeals, applying New Jersey law in an FTCA claim, held that expert testimony was not necessary to prove that the government's action caused plaintiff's alleged injuries because in that case the causal mechanism was obvious: plaintiff was driving his truck, his truck was struck head on by a Postal Service jeep, and plaintiff claimed that his knees began to hurt immediately after the collision. Estelle v. Gamble gives similarly obvious examples in claims under the Eighth Amendment case where no expert testimony is needed to show a culpable state of mind. It should not require an expert to explain that decisions to throw away the prisoner's ear and stitch the stump rather than treat the prisoner after an altercation or to inject a prisoner with penicillin when it is known that he is allergic are the product of indifference. 429 U.S. at 104 n.10.

4

But the proper standard of care in treating a broken bone internal to the hand is not obvious at all[1]. Laymen are not competent without expert testimony to judge between the medical advisability in plaintiff's case of performing a bone graft and using a bone stimulator, even if they know what those two treatments are. Even if the defendant were to stipulate that a

---

1. Plaintiff recognizes this, because in addition to arguing that this case does not need an expert, plaintiff in the alternative requests the court to appoint him an expert. docket no. 24. The court has no power to do so. Boring v. Kozakiewicz, 833 F.2d 468, 474 (3d Cir.1987), cert. denied, 485 U.S. 991 (1988). A court has the discretionary power to request counsel to represent a plaintiff, but even in the Third Circuit's most expansive discussion of the point that the need for expert testimony urges in favor of appointing counsel, there is no suggestion that the court can appoint expert witnesses for a party. See Parham v. Johnson, 126 F.3d 454, 460 (3d Cir.1997). Federal Rule of Evidence 706 refers to the power of the court to appoint its own impartial expert, see F.R.E. 706(d), but does not grant any authority to appoint an expert for one of the parties. Nor does any other source of law.
    Nor can a district court ignore the implications hurried over by Parham's suggestion that if the court appoints counsel, counsel can find an expert. (And having considered all the factors mandated by the Court of Appeals in Tabron v. Grace 6 F.3d 147 (3d Cir.1993), I decline to appoint counsel for plaintiff.) Appointment of counsel does not imply appointment of evidence: in theory and to a large extent in practice, appointment of counsel is a neutral act to help a party present an existing case in the most favorable light. Appointment of an expert witness (directly or indirectly by appointing counsel with the understanding that counsel would find the expert) by contrast abandons neutrality because the court at that point has made the ex ante determination that favorable evidence must exist for the party receiving the appointed expert.
    A further defect of Parham's dicta is its implicit creation of a two-tier system of justice in which plaintiffs without counsel could receive aid counseled plaintiffs could not. Giving parties an incentive to appear without counsel would contradict the goal identified in Tabron v. Grace.

5

bone graft was the only acceptable treatment option in the relevant medical community (or that unlike in the world outside prison a seventy day delay before plaintiff was seen by a specialist was negligence per se), plaintiff would still need expert testimony to show causation of injury. Unlike the soft tissue injury caused in Bushman immediately upon impact, the broken hand suffered by plaintiff immediately upon falling in November 2001 is not the injury for which he seeks compensation. The compensable injury alleged by plaintiff is that he suffered a delay in the healing process and that he still suffers pain as a result of the treatment option approved by defendant. Without expert witness testimony, a lay jury cannot evaluate the claim that plaintiff's preferred course of treatment would have produced a different result than casting and use of a bone stimulator. Trial would be a futile exercise since plaintiff has no medical expert witness to testify that the defendant breached the standard of care to plaintiff, or that the breach caused plaintiff any harm. Summary judgment must be awarded to defendant.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have ten days to serve and file written objections to this Report and Recommendation.

DATE: June 13, 2007

Keith A. Pesto,
United States Magistrate Judge

Notice to counsel of record by ECF and by U.S. Mail to:

        Donald Osorio #31291-037
        F.C.I. Sandstone
        P.O. Box 1000
        Sandstone, Minnesota 55072